**LARSON LLP**
STEPHEN G. LARSON (SBN 145225)
*slarson@larsonllp.com*
PAUL A. RIGALI (SBN 262948)
*prigali@larsonllp.com*
555 South Flower Street
Suite 4400
Los Angeles, CA 90071
Tel: (213) 436-4888
Fax: (213) 623-2000

**LARSON LLP**
STEVEN E. BLEDSOE (SBN 157811)
*sbledsoe@larsonllp.com*
600 Anton Boulevard
Suite 1270
Costa Mesa, CA 92626
Tel: (949) 516-7250
Fax: (949) 516-7251

Attorneys for Plaintiff
ALBERT NICHOLAS HORVATH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT NICHOLAS HORVATH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC.; ROBERT J. SCARINGE; CLAIRE MCDONOUGH; JEFFREY R. BAKER; JITEN BEHL; KAREN BOONE; SANFORD SCHWARTZ; ROSE MARCARIO; PETER KRAWIEC; JAY FLATLEY; PAMELA THOMAS-GRAHAM; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC; BARCLAYS CAPITAL INC.; DEUTSCHE BANK SECURITIES INC.; ALLEN & COMPANY LLC; BofA SECURITIES, INC.; MIZUHO SECURITIES USA LLC; WELLS FARGO SECURITIES, LLC; NOMURA SECURITIES INTERNATIONAL, INC.; PIPER SANDLER & CO.; RBC CAPITAL MARKETS, LLC; ROBERT W. BAIRD & | Case No. 8:22-cv-00444<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

CO. INCORPORATED; WEDBUSH
SECURITIES INC.; ACADEMY
SECURITIES, INC.; BLAYLOCK VAN,
LLC; CABRERA CAPITAL MARKETS
LLC; C.L. KING & ASSOCIATES, INC.;
LOOP CAPITAL MARKETS LLC;
SAMUEL A. RAMIREZ & COMPANY,
INC.; SIEBERT WILLIAMS SHANK &
CO., LLC; and TIGRESS FINANCIAL
PARTNERS, LLC,

　　　　　Defendants.

Plaintiff Albert Nicholas Horvath ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Rivian Automotive, Inc. ("Rivian" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal securities class action on behalf of a class (the "Class") of all persons and entities who purchased Rivian common stock between November 10, 2021, and March 10, 2022, inclusive (the "Class Period"), and all persons and entities who purchased Rivian common stock pursuant and/or traceable to the Registration Statement (defined below) issued in connection with Rivian's November 2021 initial public offering (the "IPO"). This action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") against Rivian and certain of the Company's officers, directors, and underwriters.

2.    Rivian, a Delaware corporation with principal executive offices in Irvine, California, designs, develops, and manufactures electric vehicles ("EVs"), including an electric SUV (the "R1S") and an electric pickup truck (the "R1T").

3.    On October 1, 2021, Rivian filed a registration statement for the IPO on Form S-1, which, after several amendments, was declared effective on November 9, 2021 (the "Registration Statement"). On November 9, 2021, Rivian issued the

prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement.

4.      In connection with the IPO, Rivian offered and sold 175,950,000 shares of its common stock at a price to the public of $78.00 per share, which included the exercise in full by the IPO underwriters of their option to purchase an additional 22,950,000 shares of the Company's common stock. The gross proceeds to the Company from the IPO were $13,724,100,000, before deducting underwriting discounts and commissions, and estimated offering expenses payable by the Company.

5.      In the Registration Statement, Defendants represented—among other things—that Rivian had 55,400 combined preorders for the R1T and R1S, and that Rivian planned to "produce approximately 1,200 R1Ts and 25 R1Ss and deliver approximately 1,000 R1Ts and 15 R1Ss" by the end of 2021.

6.      In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Rivian would not meet its 2021 production and delivery targets; (2) Rivian's vehicles were underpriced and the Company would need to substantially increase prices; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects lacked a reasonable basis.

7.      The truth about Rivian's production capabilities and business prospects began to emerge on December 16, 2021, when Rivian disclosed that it would fall "a few hundred vehicles short of [its] 2021 production target of 1,200 [vehicles]."  In addition to admitting that production was lagging behind, Defendant Robert J. Scaringe—the Company's Founder, Chief Executive Officer, and Chairman— acknowledged that Rivian's vehicles were "very aggressively priced" and that, against "the backdrop of inflation," the Company was "look[ing] at [their] pricing."

8.     On this news, Rivian's stock price fell $11.17 per share, or more than 10%, from a close of $108.87 per share on December 16, 2021, to close at $97.70 per share on December 17, 2021.

9.     On January 10, 2022, Rivian confirmed that it had only "produced 1,015 vehicles by the end of 2021" and that only "920 vehicles were delivered by that date."

10.     Additional corrective information surfaced on March 1, 2022, when Rivian announced that it would dramatically increase the starting price of the R1T by about 17% (to approximately $79,000 from $67,500), and the R1S by about 20% (to approximately $84,500 from $70,000).  Notably, these price changes would apply not only to future orders, but also to existing preorders (many of which had been placed as long as three or more years prior).  According to Defendant Jiten Behl—the Company's Chief Growth Officer—the price increases were the result of "inflationary pressure, increasing component costs, and unprecedented supply chain shortages and delays for parts (including semiconductor chips)."

11.     In a swift and fierce backlash, media outlets reported that many Rivian customers reported that they had cancelled, or planned to cancel, their preorders as a result of the dramatic price hikes.

12.     On this news, Rivian's stock price fell $8.35 per share, or more than 13%, from a close of $61.91 per share on March 1, 2022, to close at $53.56 per share on March 2, 2022.

13.     Just two days later, on March 3, 2022, Defendants retracted aspects of the price increases, now announcing that preorders that had been placed before March 1, 2022, would not be subject to the new prices, and that customers who had cancelled their preorders could reinstate their orders at the original prices.  Defendant Scaringe admitted that applying the price increases to existing preorders was "wrong" and "broke [customers'] trust in Rivian."

14.     On this news, Rivian's stock price fell an additional $2.65 per share, or approximately 5%, from a close of $53.56 per share on March 2, 2022, to close at $50.91 per share on March 3, 2022.

15.     Then, on March 10, 2022, Rivian announced disappointing financial results for the fourth quarter of fiscal year 2021, including revenue and adjusted losses per share that fell far below analysts' estimates.  Additionally, while analysts had expected Rivian to produce 40,000 vehicles in 2022, Defendants disclosed that the Company expected to produce only 25,000 vehicles in 2022.

16.     On this news, Rivian's stock price fell $3.11 per share, or approximately 7.5%, from a close of $41.16 per share on March 10, 2022, to close at $38.05 per share on March 11, 2022.

17.     Critically, Defendants' December 2021 and March 2022 admissions corroborate allegations raised a week *prior* to the IPO by Laura Schwab ("Schwab")— a former Rivian executive—who had sued the Company for gender discrimination and alleged that senior executives had been warned of production issues and that "it was clear that the [Company's] vehicles were underpriced, and each sale would result in a loss [for] the [C]ompany."  Schwab also alleged in her November 4, 2021 lawsuit that she had reported her pricing concerns to other Rivian executives beginning in the spring of 2021, including Defendant Behl—who initially "brushed her off" but eventually agreed that the Company "would need to raise the vehicle prices after the IPO."

18.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common stock when the truth was revealed, Plaintiff and other members of the Class have suffered significant damages.

## II.    <u>JURISDICTION AND VENUE</u>

19.     Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated

1    thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and Sections 11 and 15
2    of the Securities Act, 15 U.S.C. §§ 77k and 77o.

3        20.    This Court has jurisdiction over the subject matter of this action under 28
4    U.S.C. § 1331, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 22 of
5    the Securities Act, 15 U.S.C. § 77v.

6        21.    Venue is proper in this District under Section 27 of the Exchange Act, 15
7    U.S.C. § 78aa, 28 U.S.C. § 1391(b), and Section 22 of the Securities Act, 15 U.S.C. §
8    77v because Rivian is headquartered in this District, Defendants conduct business in
9    this District, and many of the acts and conduct that constitute the violations of law
10   complained of herein, including the dissemination to the public of materially false and
11   misleading information, occurred in this District.

12       22.    In connection with the acts, conduct, and other wrongs alleged in this
13   Complaint, Defendants, directly or indirectly, used the means and instrumentalities of
14   interstate commerce, including the United States mails, interstate telephone
15   communications, and the facilities of the national securities markets.

16   **III.   PARTIES**

17       23.    Plaintiff, as set forth in the accompanying certification, incorporated by
18   reference herein, purchased Rivian common stock at artificially inflated prices during
19   the Class Period, including common stock traceable to the Registration Statement, and
20   has been damaged thereby.

21       24.    Defendant Rivian is a Delaware corporation headquartered at 14600
22   Myford Road, Irvine, California.

23       25.    Defendant Robert J. Scaringe ("Scarimge") is Rivian's Founder and Chief
24   Executive Officer, and is the Chairman of the Company's Board of Directors.
25   Scaringe signed the Registration Statement.

26       26.    Defendant Claire McDonough ("McDonough") is Rivian's Chief
27   Financial Officer.  McDonough signed the Registration Statement.

28

27.    Defendant Jeffrey R. Baker ("Baker") is Rivian's Chief Accounting Officer.  Baker signed the Registration Statement.

28.    Defendant Jiten Behl ("Behl") is Rivian's Chief Growth Officer.

29.    Defendant Karen Boone ("Boone") is a Rivian Director and signed the Registration Statement.

30.    Defendant Sanford Schwartz ("Schwartz") is a Rivian Director and signed the Registration Statement.

31.    Defendant Rose Marcario ("Marcario") is a Rivian Director and signed the Registration Statement.

32.    Defendant Peter Krawiec ("Krawiec") is a Rivian Director and signed the Registration Statement.

33.    Defendant Jay Flatley ("Flatley") is a Rivian Director and signed the Registration Statement.

34.    Defendant Pamela Thomas-Graham ("Thomas-Graham") is a Rivian Director and signed the Registration Statement.

35.    Scaringe, McDonough, Baker, Behl, Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham are collectively referred to as the "Individual Defendants."

36.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Rivian's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were

being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

37.     Defendants Morgan Stanley & Co. LLC ("Morgan Stanley"), Goldman Sachs & Co. LLC ("Goldman Sachs"), J.P. Morgan Securities LLC ("J.P. Morgan"), Barclays Capital Inc. ("Barclays"), Deutsche Bank Securities Inc. ("Deutsche Bank"), Allen & Company LLC ("Allen & Company"), BofA Securities, Inc. ("BofA"), Mizuho Securities USA LLC ("Mizuho"), Wells Fargo Securities, LLC ("Wells Fargo"), Nomura Securities International, Inc. ("Nomura"), Piper Sandler & Co. ("Piper Sandler"), RBC Capital Markets, LLC ("RBC"), Robert W. Baird & Co. Incorporated ("Robert W. Baird"), Wedbush Securities Inc. ("Wedbush"), Academy Securities, Inc. ("Academy"), Blaylock Van, LLC ("Blaylock Van"), Cabrera Capital Markets LLC ("Cabrera"), C.L. King & Associates, Inc. ("C.L. King"), Loop Capital Markets LLC ("Loop"), Samuel A. Ramirez & Company, Inc. ("Samuel A. Ramirez"), Siebert Williams Shank & Co., LLC ("Siebert Williams Shank"), and Tigress Financial Partners, LLC ("Tigress")—collectively referred to herein as the "Underwriter Defendants"—were underwriters of Rivian's IPO.

38.     Rivian, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Defendants' False and Misleading Statements

39.     The Company commenced its IPO on or about November 10, 2021, raising more than $13.7 billion (prior to underwriting discounts and commissions, and estimated expenses) from investors by selling 175,950,000 shares of its common stock at a price to the public of $78.00 per share, which included the exercise in full by the IPO underwriters of their option to purchase an additional 22,950,000 shares of the Company's common stock.

40.    The Registration Statement contained misleading statements of material fact, and omitted material facts required by governing regulations and necessary to make statements in the Registration Statement not misleading.

41.    The Registration Statement specifically touted Rivian's production capabilities and targets, stating:

> In the consumer market, we launched the R1 platform with our first-generation consumer vehicle, the R1T, a two-row five-passenger pickup truck, and began making customer deliveries in September 2021.  As of September 30, 2021, we produced 12 R1Ts and delivered 11 R1Ts, and as of October 31, 2021, we produced 180 R1Ts and delivered 156 R1Ts.  Nearly all of these vehicles were delivered to Rivian employees, and we expect to ramp deliveries to third-party customers as we increase our production rate.  We plan to launch and commence customer deliveries for the R1S, a three-row seven-passenger sports utility vehicle ("SUV") in December 2021 following the completion of ongoing vehicle validation and all required testing.  By the end of 2021, we intend to produce approximately 1,200 R1Ts and 25 R1Ss and deliver approximately 1,000 R1Ts and 15 R1Ss.

42.    Consistent with Rivian's production targets, the Registration Statement also emphasized the Company's growth potential, explaining that:

> As of October 31, 2021, we had approximately 55,400 R1T and R1S preorders in the United States and Canada from customers who each paid a cancellable and fully refundable deposit of $1,000.

1          \*      \*      \*

2          Based on our current production forecast, we expect to fill

3          our preorder backlog of approximately 55,400 R1 vehicles

4          by the end of 2023.  Our manufacturing facility in Normal,

5          Illinois (the "Normal Factory") is currently equipped to

6          produce up to 150,000 vehicles annually (distributed

7          between the R1 platform, which will be used to produce the

8          R1T and R1S, and the RCV platform, which will be used to

9          produce EDVs and other commercial vehicles), when the

10         equipment is operated at full rate and on multiple shifts.  The

11         current annual installed capacity for the R1 platform and

12         RCV platform is approximately 65,000 and 85,000 vehicles,

13         respectively.  We produced 104 R1T vehicles during the last

14         week of October 2021, representing approximately 8% of

15         our target R1 production rate.  Our target is to produce

16         approximately 1,310 R1 vehicles a week, which when

17         annualized (assuming 49.6 working weeks per year),

18         equates to the current installed R1 platform capacity of

19         approximately 65,000 R1 vehicles annually.  With respect to

20         the RCV platform, our target is to produce approximately

21         1,710 commercial vehicles (including EDVs) a week, which

22         when annualized (assuming 49.6 working weeks per year),

23         equates to the current installed RCV platform capacity of

24         approximately 85,000 vehicles annually.  We expect our

25         vehicle production rate will improve as we continue to

26         increase the speed of the line, hire and train employees to

27         run additional shifts, commence production of the R1S and

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
9

1    EDVs, and increase the rate of purchased materials from our
2    supply chain.  We expect to reach a vehicle production rate,
3    which, when annualized, would result in us using 100% of
4    the facility's current installed capacity of up to 150,000
5    vehicles by late 2023.

6    43.    As detailed in the Registration Statement, Rivian's customer
7    relationships were an integral part of the Company's business strategy:

8    ***Direct Customer Relationships***.  We are a customer-centric
9    organization.  Our direct relationships with customers allow
10   us to design solutions that best serve their needs, drive strong
11   engagement, remove structural inefficiencies, create
12   transparency, and increase customer satisfaction and
13   referrals.  Our relationships also serve as a medium for
14   establishing a real-time feedback loop, through which we
15   gather valuable data to improve our products and services.
16   By controlling every customer touchpoint from awareness
17   through ownership, we replace a patchwork of third parties
18   with our end-to-end, integrated solutions.  We expect to
19   deliver more value to customers along with a superior
20   experience that will generate brand loyalty and increase
21   adoption of our offerings.

22   44.    Similarly, the Registration Statement noted that the Company's success
23   hinged upon customers' initial experience with the R1T and R1S, stating that these
24   vehicles "are our handshake with the world, the first step in building a relationship
25   with customers" and that Rivian is "focused on ensuring this first experience with a
26   Rivian vehicle creates excitement and passion for our brand."

27
28

45.    According to the Registration Statement, "[e]very aspect of our brand has been developed and is being managed in-house to ensure we create a unique consumer journey that is difficult to replicate" as "[e]ach step builds on the other, forming a completely integrated and seamless experience for our owners":



46.    The Registration Statement further stated that:

> Our success depends on attracting a large number of potential customers to purchase our vehicles and the associated services we will provide to our customers. As of October 31, 2021, we had accepted preorders for approximately 55,400 R1Ts and R1Ss in the United States and Canada. Preorders are not commitments to purchase our R1T or R1S and are subject to cancelation by customers. If our existing preorder and prospective customers do not perceive our vehicles and services to be of sufficiently high value and quality, cost competitive and appealing in aesthetics or performance, or if the final production version

of the R1S is not sufficiently similar to the drivable design prototypes, we may not be able to retain our current preorder customers or attract new customers, and our business, prospects, financial condition, results of operations, and cash flows would suffer as a result.

47.   At the time of the IPO, the starting prices for the R1T and R1S were $67,500 and $70,000, respectively.

48.   The statements set forth in ¶¶ 41–46 were materially false and/or misleading when made because Defendants misrepresented and/or failed to disclose that: (1) Rivian would not meet its 2021 production and delivery targets; (2) Rivian's vehicles were underpriced and the Company would need to substantially increase prices; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects lacked a reasonable basis.

49.   Additionally, pursuant to Item 303 of SEC Regulation S-K and the SEC's related interpretive releases thereto, an issuer is required to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(b)(2)(ii).  Such disclosures are required to be made by an issuing company in registration statements filed in connection with public stock offerings.

50.   However, the Registration Statement failed to disclose material information regarding known trends and uncertainties pursuant to Item 303.  As alleged herein, the Registration Statement failed to disclose that Rivian would not meet its 2021 production and delivery targets and that Rivian's vehicles were underpriced and the Company would need to substantially increase prices. Defendants had a duty to disclose these known trends and uncertainties.  Because the Registration Statement failed to make the requisite disclosures, Defendants violated Item 303.

B. **The Truth Begins to Emerges**

51.     The truth about Rivian's production capabilities and business prospects began to emerge on December 16, 2021, when Rivian announced its first quarterly financial results as a publicly traded company.  In connection with these financial results, Rivian revealed that it "expect[ed] to be a few hundred vehicles short of [its] 2021 production target of 1,200 [vehicles]."  In explaining the shortfall, Defendant Scaringe stated that "ramping up a production system like this [is] a really complex orchestra," and that "ramping up the R1S [production line] in November, while also ramping production of the R1T was more challenging than expected."

52.     Additionally, Defendants admitted that they were considering price increases for their vehicles, with Defendant Scaringe acknowledging that Rivian's vehicles are "very aggressively priced," and that the adjustment of vehicle prices is "something that we've certainly considered and talked about quite a bit as a management team."   When an analyst asked whether the Company was "looking at opportunities to adjust pricing just based on what the demand is for the product," Defendant Scaringe explained that it's "certainly the backdrop of inflation that we're seeing, and a very strong demand for products . . . broadly within the electrified space has caused us to look at our pricing."

53.     Despite acknowledging production issues and inflationary price pressure, Defendants reassured investors that Rivian's growth prospects were strong.   For example, Defendant Behl explained that the Company continued "to observe strong affinity for our brand, as evidenced by the . . . backlog of preorders."   Specifically, Behl reported that the Company now had approximately 71,000 preorders for the R1T and R1S—a 28% increase in a little over a month since the IPO.  Rivian reiterated that its manufacturing facility "has installed capacity to annually produce 150,000 vehicles" and claimed that the volume of preorders demonstrates that the Company's

vehicles "resonate with customers" and "have established the Rivian brand in the most attractive consumer and commercial vehicle market segments."

54.    On this news, Rivian's stock price fell $11.17 per share, or more than 10%, from a close of $108.87 per share on December 16, 2021, to close at $97.70 per share on December 17, 2021.

55.    On January 10, 2022, Rivian confirmed that it had only "produced 1,015 vehicles by the end of 2021" and that only "920 vehicles were delivered by that date."

56.    Additional information correcting Defendants' statements and omissions emerged on March 1, 2022, when Rivian announced that it would dramatically increase the starting price of the R1T by about 17% (to approximately $79,000 from $67,500), and the R1S by about 20% (to approximately $84,500 from $70,000).  In addition to increasing the starting prices for the R1T and R1S, under the new pricing scheme, vehicle feature "[c]onfigurations that had previously been standard, or the only available option, now cost thousands of dollars extra," such that a customer who preordered a $75,000 vehicle could now be required to pay nearly $100,000 for the same features.  Rivian's price increases would apply not only to future orders, but also to existing preorders (many of which had been placed as long as three or more years prior).  According to Defendant Behl, the price increases were the result of "inflationary pressure, increasing component costs, and unprecedented supply chain shortages and delays for parts (including semiconductor chips)."

57.    As reported by numerous media outlets, many customers who had preordered Rivian vehicles (some as many as three or more years prior) were outraged and had indicated that they were canceling their preorders due to the price increases. As explained by *Vice*:

> Price increases are obviously a fact of life these days,
> especially with the car market, a key driver of inflation.  But
> it is rare to see car companies apply price changes, especially

such drastic ones, to existing preorders.  For example, Tesla regularly changes vehicle prices, but only to new orders. Legacy automakers have been fighting with dealers who are charging much more than the sticker price for electric vehicle preorders, telling them to knock it off.

58.    In response to news of the Company's substantial (and expansive) price increases, Rivian's stock price fell $8.35 per share, or more than 13%, from a close of $61.91 per share on March 1, 2022, to close at $53.56 per share on March 2, 2022.

59.    Facing significant investor and customer backlash, Rivian backtracked just two days later on March 3, 2022, and announced that it would not apply the price increases to preorders that had been placed before March 1, 2022.  Additionally, the Company indicated that it would also allow customers who had cancelled their preorders to reinstate their orders at the original prices.  In announcing these changes, Defendant Scaringe acknowledged that the extension of the price increases to existing preorders was "wrong" and "broke [customers'] trust in Rivian."  Indeed, as explained by an analyst from CFRA Research, "the damage has been done and many customers will be purchasing EVs from competitors instead."

60.    On this news, Rivian's stock price fell an additional $2.65 per share, or approximately 5%, from a close of $53.56 per share on March 2, 2022, to close at $50.91 per share on March 3, 2022.

61.    Then, on March 10, 2022, Rivian announced disappointing financial results for the fourth quarter of fiscal year 2021, including revenue ($54 million) and adjusted losses ($2.43 per share) that fell far below analysts' estimates.  Additionally, while analysts had expected Rivian to produce 40,000 vehicles in 2022 (and Defendants had previously indicated that its manufacturing facility "has installed capacity to annually produce 150,000 vehicles"), Rivian revealed that it expected to

1  produce only 25,000 vehicles in 2022 "due to the supply chain constraints currently

2  visible to [them]."

3      62.    On this news, Rivian's stock price fell $3.11 per share, or approximately

4  7.5%, from a close of $41.16 per share on March 10, 2022, to close at $38.05 per share

5  on March 11, 2022.

6      63.    Defendants' admissions regarding the production and pricing issues

7  impacting Rivian's operations validate the concerns raised by Laura Schwab with

8  fellow Rivian executives prior to the Company's November 2021 IPO.  As discussed

9  in her November 4, 2021 employment discrimination lawsuit, Schwab raised concerns

10  in pre-IPO planning meetings in September 2021 that "the publicly announced dates

11  for manufacturing and delivery were not achievable," and with Defendant Behl that

12  "the manufacturing process had yet to be refined to a point that the company could

13  confidently assure a consumer of the vehicle's quality, integrity, and safety."

14  Similarly, Schwab alleged that she raised concerns with several executives, including

15  Defendant Behl, that "it was clear that the vehicles were underpriced, and each sale

16  would result in a loss [for] the [C]ompany."  According to Schwab, Defendant Behl

17  "brushed her off" but later "agreed that they would need to raise the vehicle prices

18  *after the IPO*" when a male executive subsequently raised the same concerns

19  (emphasis added).

20      64.    Ultimately, the December 2021 and March 2022 corrective disclosures

21  demonstrate that Schwab's pre-IPO concerns were ignored by Defendants until after

22  the IPO was completed.

23  **V.**     **CLASS ACTION ALLEGATIONS**

24      65.    Plaintiff brings this class action under Rule 23 of the Federal Rules of

25  Civil Procedure on behalf of the Class consisting of all persons and entities who

26  purchased Rivian common stock between November 10, 2021, and March 10, 2022,

27  inclusive, and all persons and entities who purchased Rivian common stock pursuant

28

and/or traceable to the Registration Statement issued in connection with Rivian's November 2021 IPO. Excluded from the Class are Defendants, their agents, directors and officers of Rivian and/or the Underwriter Defendants, and their families and affiliates.

66.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

67.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.     Whether Rivian and the Individual Defendants violated the Exchange Act;

b.     Whether Defendants violated the Securities Act;

c.     Whether Defendants omitted and/or misrepresented material facts;

d.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

e.     Whether Rivian and the Individual Defendants knew or recklessly disregarded that their statements were false and misleading;

f.     Whether the prices of Rivian common stock were artificially inflated; and

g.     The extent of damage sustained by members of the Class and the appropriate measure of damages.

1    68.    Plaintiff's claims are typical of those of the Class because Plaintiff and

2    the Class sustained damages from Defendants' wrongful conduct.

3    69.    Plaintiff will adequately protect the interests of the Class and has retained

4    counsel who are experienced in securities class actions.  Plaintiff has no interests that

5    conflict with those of the Class.

6    70.    A class action is superior to other available methods for the fair and

7    efficient adjudication of this controversy.    Joinder of all Class members is

8    impracticable.

9    **VI.    PRESUMPTION OF RELIANCE**

10    71.    At all relevant times, the market for Rivian's common stock was an

11    efficient market for the following reasons, among others:

12    a.    Rivian's common stock met the requirements for listing, and was listed

13    and actively traded on the NASDAQ, a highly efficient and automated

14    market;

15    b.    As a regulated issuer, Rivian filed periodic public reports with the SEC

16    and the NASDAQ;

17    c.    Rivian regularly and publicly communicated with investors via

18    established market communication mechanisms, including through

19    regular disseminations of press releases on the national circuits of major

20    newswire services and through other wide-ranging public disclosures,

21    such as communications with the financial press and other similar

22    reporting services; and

23    d.    Rivian was followed by several securities analysts employed by major

24    brokerage firm(s) who wrote reports which were distributed to the sales

25    force and certain customers of their respective brokerage firm(s).  Each

26    of these reports was publicly available and entered the public

27    marketplace.

28

72.     As a result of the foregoing, the market for Rivian's common stock promptly digested current information regarding Rivian from all publicly available sources and reflected such information in the price of Rivian's common stock.  Under these circumstances, all purchasers of Rivian's common stock during the Class Period suffered similar injury through their purchase of Rivian's common stock at artificially inflated prices and the presumption of reliance applies.

73.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this Action involves Defendants' failure to disclose material adverse information regarding the availability of reliable data to predict future demand for the Company's supplies which artificially inflated revenue—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Company's ability to reliably predict demand for its supplies and place the appropriate amount of inventory into its channel network, that requirement is satisfied here.

## VII.  <u>NO SAFE HARBOR</u>

74.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.  Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying

or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII. LOSS CAUSATION/ECONOMIC LOSS

75.    Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The prices of Rivian's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Rivian common stock during the Class Period and/or pursuant or traceable to the Registration Statement, Plaintiff and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## IX.    CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and**

**SEC Rule 10b-5 Promulgated Thereunder**

**Against Rivian and the Individual Defendants**

76.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

77.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Rivian's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

78.   Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Rivian's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

79.   During the Class Period, Rivian and the Individual Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

80.   Rivian and the Individual Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Defendants engaged in this misconduct to conceal Rivian's true condition from the investing public and to support the artificially inflated prices of Rivian's common stock.

81.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Rivian's common stock. Plaintiff and the Class would not have purchased Rivian's common stock at the prices they paid, or at all, had they been aware that the market prices for Rivian's common stock had been artificially inflated by Rivian and the Individual Defendants' fraudulent course of conduct

82.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of Rivian's common stock during the Class Period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

### Violation of Section 20(a) of the Exchange Act

### Against the Individual Defendants

83.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

84.     The Individual Defendants acted as controlling persons of Rivian within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

86.     As described above, Rivian and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class

suffered damages in connection with their purchases of Rivian's common stock during the Class Period.

## COUNT III

### Violation of Section 11 of the Securities Act
### Against All Defendants (Except Defendant Behl)

87.   Plaintiff incorporates by reference the allegations in the preceding paragraphs, with the exception that this claim is premised on the remedies available under Section 11 of the Securities Act, 15 U.S.C. § 77k, and expressly excludes and disclaims any allegation that Defendants acted with fraudulent intent or recklessness.

88.   The Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading and/or omitted facts required to be stated therein.

89.   Each of Defendants named herein is responsible for and are liable for the contents and dissemination of the Registration Statement.

90.   The Individual Defendants (with the exception of Defendant Behl) each signed the Registration Statement and caused it to be declared effective by the SEC.

91.   Rivian is the registrant for the IPO and as issuer of the shares is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Registration Statement.

92.   The Underwriter Defendants underwrote the IPO and their failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

93.   These Defendants caused the Registration Statement to be filed with the SEC and to be declared effective, resulting in the issuance and sale of approximately 176 million shares, which shares were purchased by Plaintiff and the Class.

94.   None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration

1  Statement were true and did not omit any material facts required to be stated therein
2  or facts that were necessary to make the statements made therein not false or
3  misleading.

4       95.   By reason of the conduct herein alleged, each of these Defendants
5  violated Section 11 of the Securities Act.

6  <strong><u>COUNT IV</u></strong>

7  <strong>Violation of Section 15 of the Securities Act</strong>

8  <strong>Against the Individual Defendants</strong>

9       96.   Plaintiff incorporates by reference the allegations in the preceding
10 paragraphs, with the exception that this claim is premised on the remedies available
11 under Section 15 of the Securities Act, 15 U.S.C. § 77o, and expressly excludes and
12 disclaims any allegation that Defendants acted with fraudulent intent or recklessness.

13      97.   Each of the Individual Defendants was a control person of Rivian by
14 virtue of their position as a director or senior officer with the Company.

15      98.   By reason of the conduct herein alleged, each Individual Defendant
16 violated Section 15 of the Securities Act.

17      **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

18           a.   Determining that this action is a proper class action under Rule 23
19                 of the Federal Rules of Civil Procedure;

20           b.   Awarding compensatory damages and equitable relief in favor of
21                 Plaintiff and other members of the Class against all Defendants,
22                 jointly and severally, for all damages sustained as a result of
23                 Defendants' wrongdoing, in an amount to be proven at trial,
24                 including interest thereon;

25           c.   Awarding Plaintiff and the Class their reasonable costs and
26                 expenses incurred in this action, including counsel fees and expert
27                 fees; and

28

d.      Such other and further relief as the Court may deem just and proper.

## X.    **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 22, 2022                          Respectfully submitted,

**LARSON LLP**

*/s/ Stephen G. Larson*
Stephen G. Larson
Paul A. Rigali
Steven E. Bledsoe

Attorneys for Plaintiff Albert Nicholas Horvath